Good afternoon. May it please the Court, I'm Mark McDonald, representing the petitioner Tom Loden and the appellant in the case. When Mr. Loden was approached by his counsel on his trial, they came to him and said, you have to decide whether you're going to plead guilty or go to trial. They didn't tell him of any defense strategy that they had. They didn't discuss with him any potential mitigation case they might present. They didn't tell him of any mitigation evidence they'd collected or any mitigation witnesses they had lined up. They didn't talk to him and try to persuade him that the best course of action would be to proceed to trial, present a defense, present mitigation evidence. They just asked him to make a decision. And he's alleged in his petition and supported by his affidavit that those facts were what occurred, and that based on that, he decided, I might as well plead guilty. I might as well waive jury sentencing. And he also has alleged that if he had been properly advised with a full mitigation case that we developed in post-conviction proceedings, had been advised of all the witnesses who were prepared to come forward and talk on his behalf about his life, the abuse he had suffered as a child, his military experiences, most importantly how changed he was as a result of his combat experience in the Gulf War, if he had been told that he had a psychologist and psychiatrist lined up prepared to testify that Mr. Lowden suffered from post-traumatic stress disorder, based both on his combat experience, his military experiences, and all of his experiences growing up, he would have elected to proceed to trial. He would have told them to present mitigation evidence. Let me ask you something. Under Mississippi rules, can the state habeas court consider affidavits in lieu of live testimony? In other words, are affidavits acceptable as probative evidence under the Mississippi rules? In post-conviction proceedings, Mississippi rules state that, like in all habeas cases, that the well-pleaded allegations of the complaint, of the petition, have to be accepted as true. Now, if the court can look at record evidence, trial transcript evidence, that belies the allegations or refutes the claim, the Mississippi courts can decide that on the papers. But that's not what happened here. There was no record evidence, no trial transcript, that belied Mr. Lowden's claims. And yet the Mississippi Supreme Court did reject all of his evidence based solely on affidavits and on the papers. Well, there was some evidence in the record. The fact of the plea itself and the colloquy that he knew and understood and that he chose to do that and that he said at some point on the record that he thought his only shot was with the suppression and that if he didn't have that, he just, and then at one point he just wanted to die and put an end to it all. I mean, there is some contrary evidence in the record, isn't there? Well, some of what Your Honor just said is in the record and some of it is not. There was no statement in the record. There was no statement in the trial transcript, any statement to the court, by Mr. Lowden saying, I want to die. No, but the fact that he said, I just want to get it over with and that my only shot is this other thing and that I understand I'm going to get the death penalty. He did say I understood that I was likely going to get the death penalty. Again, not on the trial transcript. In the trial transcript, there's no question that he was advised of his rights to go to trial and he elected not to. But this is a substantial point that the Mississippi Supreme Court, and frankly I think the district court, got wrong, which is to say that if a defendant is advised of his right to go to trial and waives the right, if he's advised of his right to have a jury sentence him and waives the right, that that forecloses an ineffective assistance of counsel claim. And the U.S. Supreme Court has made clear that that's not the right analysis. Under Strickland, it's not a question of whether the defendant knew of his rights and waived them. The two issues obviously in Strickland are was counsel competent and was there a reasonable probability the outcome would have been different. But what Your Honor was asking me about is, well, is there enough here on the trial transcript to review Mr. Lowden's claims and therefore to respond to Judge Davis's question about whether this could properly all be decided on the papers, I say the answer is no. That's not in the trial transcript. Let me ask you this. The court was entitled to consider the affidavits of trial counsel, was it not? Well, they're not. The state habeas court. Appropriate evidence? On the post-conviction proceedings? Yes. Well, if it's in conflict, Your Honor, I would say that they needed to conduct an evidentiary hearing. Well, I know you're saying that. I'm asking what the Mississippi law is on it. Well, as I said, Mississippi law is that if the well-pleaded allegations of the petitioner need to be credited unless it can be refuted by the trial transcript, by a colloquy. And for example, you know, if the claim is that I didn't know I had the right to go to trial. But here, these were affidavits put in by the state after the fact. By what authority are we allowed to look behind the Mississippi court's finding to say that there wasn't really any mitigation done when the Mississippi court found that there was mitigation research done? By what authority do we have that we're allowed to look behind that instead of just saying that unless it's completely unreasonable, we have to go with Mississippi? Well, there is difference entitled, but there are two issues. One is, was it a reasonable or an unreasonable application of established law? And second, was it a reasonable or unreasonable determination of the facts? Right. And here, I think on both of those tests, the Mississippi Supreme Court's conclusions were unreasonable. First of all, the legal question in a case like this is, did counsel do a thorough investigation? The legal test isn't, was there some mitigation evidence conducted? Clearly established federal law, Wiggins, Rompillo, Williams, all require a thorough investigation of the defendant's background. And there's no finding by the Mississippi Supreme Court that there was a thorough investigation of mitigation evidence. Under what Wiggins says is that all readily available mitigation evidence has to be uncovered. There's no finding here that these counsels uncovered all readily available. So first of all, as a legal matter, it was an unreasonable application of federal law because the Mississippi Supreme Court never claimed that these counsel performed a thorough investigation, identified and found all the readily available information. With respect to an unreasonable determination of the facts, I would also say that some of the facts that were found were unreasonable and were clearly rebutted by clear and convincing evidence. And for example, the Mississippi Supreme Court relied in part on this claim by Mr. Daniels that he interviewed and spoke with a Marine Corps officer. Well, first of all, the clear and convincing evidence to the contrary is the Marine Corps officer put in an affidavit in support of our petition stating that he was the one who reached out to Mr. Daniels. It wasn't part of any contact by Mr. Daniels as part of an investigation. This was a Marine Corps attorney who had been assigned to Mr. Lowden's case in connection with separation proceedings. That lawyer said, I contacted Mr. Daniels because I wanted to find out what was going on in the criminal case. Right, but how does that make a difference in, how would that convince a jury not to give him death if it were before a jury? And then also, this follow-up question, the fact that he wasn't going to let people put on mitigating evidence, doesn't that do away with whatever the mitigating evidence that you found was? All right, so the first question Your Honor asked had to do with how does that make a difference because the fact that that wasn't an investigation of mitigation evidence when he spoke to the attorney. The issue is, was counsel's performance deficient? The fact that they didn't investigate, didn't do the thorough investigation, establishes the first prong. They didn't do, their performance was deficient. The second prong is reasonable probability, but the issue here isn't just a question of is it reasonably probable that a trial would have resulted in something less than death. The issue here is, it's a Hill case. Hill says, where a defendant says, I was misadvised about the pros and cons of pleading versus going to trial. What has to be established under Hill is, was there a reasonable probability that the defendant would have pled differently? And in Hill, that claim was rejected because the petitioner there didn't allege that he would have pled differently. Here, Mr. Lode specifically pled and alleged in his petition that had counsel done the investigation, been able to tell him the fruits of that investigation and the pros and cons of presenting it, he wouldn't have pled guilty and waived jury sentencing. So the prejudice test first... Did the petitioner testify in his habeas hearing? Not in the, no, your honor. He didn't testify in the federal habeas petition. We didn't get an evidentiary hearing below, and he didn't testify in the post-conviction proceedings that we filed. There was a prior post-conviction petition where Mr. Loden testified. And he testified that he would not have pled guilty had he known about the mitigating circumstances. That's right. It's in his pleading. That's what you mean. Well, but what I wanted to ask you was, why does the state habeas court necessarily need to accept that testimony? They were entitled to weigh the credibility of his testimony and reject it. I don't believe that is the law under federal habeas law, your honor. Where a defendant says, I was misadvised, I got ineffective counsel in connection with my plea decision. The two issues are, one, did he allege in his petition that his plea decision would have been different? And second, and this is what Padilla holds, Padilla says that the court can still evaluate that to evaluate whether or not a different plea would have been rational. And the court says, and Padilla says, well, so that means there's a check and balance here. It's not just the defendant's word. We have to look to see, would it have been rational for the defendant to make a different plea decision? And so here the issue is, if he'd been properly advised, would it have been rational for Mr. Lowden to say, you know, rather than plead guilty and waive jury sentencing, I do want to go to trial. Would that have been rational? I think it's obvious that it would have been rational. What's irrational, I'm sorry. Let me ask one question. He did testify at the hearing that was held, I think, in 2005. In any event, it was, if not then, then 2006. Did he testify at that hearing along the lines of your argument today? I know he testified that . . . he did testify that his lawyers were ineffective, but did he specifically testify along the lines of, if they had told me all the mitigation evidence . . . I doubt that he did, all right, but that's my question for you. Well, Your Honor, the answer is that he didn't because that wasn't the issue presented in that . . . Exactly. . . . particular proceeding. Because the state court found, the state court didn't credit his testimony. So your case depends upon, and it's hard when you read the state trial court's findings, for a federal court to quarrel with those. So your case depends, your case today depends upon your allegation that he has taken the position in writing, not in a hearing, that if he had understood the true import of all this mitigation evidence for his sentence, that he would have been elected to go to trial. Isn't that true? Well, in that first habeas . . . first post-conviction filing that was made . . . Yeah. . . . the argument . . . the only argument was made was that he was misadvised about the appeal implications . . . Right. . . . of pleading guilty. Right. And the state trial court specifically refused to credit that. That's right. The state court in that proceeding said, we think that he was advised of his rights by the court in the colloquy . . . Yeah. . . . that he had the right to go to trial and he waived it. That's right. But he's never testified to the fact that if I had . . . he's never testified in person that if I had understood all the mitigation evidence that was available and the true import of it, that I would have gone to trial. He never testified to that because we've never had a hearing. We filed that in the habeas petition, the post-conviction proceeding that we filed after the 2005 one Your Honor is referring to. At that point, we've made the claim that he was denied effective assistance of counsel because of the failure to do the mitigation investigation and for all the reasons that he wasn't properly advised in connection with his plea. The Mississippi Supreme Court did not grant us an evidentiary hearing there and then in the federal court, we re-alleged all those allegations and the district court didn't grant us an evidentiary hearing. So, it's true he hasn't testified to that before alive but he's not through any fault of his or counsel. We've made the request and made the claim and we've never been given an opportunity to have live testimony. So, your argument basically is there was a wealth of mitigation evidence and he never understood, he was never correctly advised of the import of that because his lawyers really never understood what was available. Is that your point? Yes, Your Honor. I mean, I would say it encompasses more than just the mitigation evidence because I would also say that it was the totality of the advice or kind of lack of advice that he was given when he was told, it's time to make your decision. You've got it, you're either going to trial or you're not, what's it going to be? And part of it, it's not merely, although substantially, it's because of the failure to develop a case or a defense case or a mitigation case, but it also had to do with the fact that when he said, well, I need to understand what the implications are, there's no question that on this record, Mr. Lowden always was interested and keenly interested in figuring out how he could seek review of all the adverse rulings that had occurred before. Yeah, but that's not the point here. That's part of the point here because part of our point here is not just limited to mitigation, it's the totality of the advice that he was given when he was forced to make that decision. And part of that was, he said, am I going to be able to appeal? Am I going to have a chance to have these rulings reviewed? And the answer was this kind of non-committal, not very precise and not very accurate answer. Well, if it's in the record, the Mississippi Supreme Court will review it. Well, but that's what was addressed by the Mississippi Court on the first round here. The second round, which is the one you started out arguing about, is different. And so the question is, how do you deal with Landrigan on that point? Well, Landrigan, well, first of all, Landrigan is not a case that involved a plea. So it wasn't, you know, I've been talking about how the Hill standard is, has the defendant alleged that he would have pled differently and is it rational that he would have pled differently? Landrigan is not that sort of case. Landrigan is a case where the court, the Arizona State Supreme Court said it wouldn't have mattered what mitigation investigation counsel had performed. This defendant wasn't going to allow it. And the U.S. Supreme Court said that as a factual matter, that factual determination that that defendant would never have allowed mitigation evidence was not an unreasonable determination of the facts. Why isn't that the same thing that we have to defer to here? The Mississippi Supreme Court did not make a finding that if Mr. Loden had been given all the information, that he never would have allowed it. I don't think that's in the Mississippi Supreme Court decision. But what they said is they treated Landrigan as announcing a rule of law, not a factual dispute. What they treated it as is if a defendant at any point in the proceedings said, in fact, the Mississippi Supreme Court went so far as to say, if at any point in the proceedings the defendant says, I don't want mitigation evidence presented, then that means that the performance was not deficient. Clearly Landrigan doesn't say that. Landrigan assumed the investigation and the performance was insufficient. They went to the second prong. Here, the Mississippi Supreme Court... But Landrigan did say, but Landrigan did say, we have never imposed an informed and knowing requirement on a defendant's decision not to introduce evidence. And it seems to me that's what you're arguing. He didn't introduce evidence because he didn't understand the significance that the evidence might have. Your Honor, that's what Padilla and Missouri v. Frey speak to. Both of those cases say that in evaluating a Sixth Amendment claim, the issue isn't whether or not a defendant had a knowing and voluntary plea or waiver. That's not Sixth Amendment jurisprudence. Let me just... This is from... I think I misspoke. I said Missouri v. Frey. But this is Lafler. Quote, an inquiry into whether the rejection of a plea is knowing and voluntary, however, is not the correct means by which to address a claim of ineffective assistance of counsel. And Padilla says the same thing as well. So the issue isn't, is there some basis in this record to say, well, Mr. Lowden knew of these rights and he waived them. That doesn't answer it. The issue is, did counsel perform their obligation, and is there a reasonable probability he wouldn't have pled as he did if they had performed competently? Also, let me also say that the facts in Landrigan are so different than this case. And on that, so there... It's not really the issue, because you've got your deference issues on both points. But go ahead and tell me about why this is different. Tell us all why it's different. Well, in Landrigan, what the U.S. Supreme Court said, based on deference to the state court finding, said that was not an unreasonable determination. But here, it would be an unreasonable determination had it been made. And as I said, the Mississippi Supreme Court did not say, we find here that Mr. Lowden never would have allowed any mitigation evidence to be presented. We have to have a Supreme Court precedent that says it would be an unreasonable determination. We can't go based upon the Ninth Circuit or some of these other citations. Under ADPA, we have to have a Supreme Court precedent that it was unreasonable. So what Supreme Court precedent do you give us that it's unreasonable? Well, it's a question of whether or not the factual determination was unreasonable. And as I said, it wasn't made. Oh, I thought you were saying, as under Landrigan, that it wouldn't... But here, this court absolutely can say that factual determination wasn't reasonable. And here, this is not a case like Landrigan, where the defendant stood up and said, Judge, I don't want mitigation evidence presented. I am opposing, I'm interfering with any effort to present it. In fact, Your Honor, if you want to give me the death sentence, I say bring it on. What case says that this Mississippi Supreme Court's legal determination that Landrigan applies is incorrect? Again, Your Honor, I think it's a function of this court has the same ability as any other court to say, the Mississippi Supreme Court unreasonably applied federal law. Right, but we have to look at federal law. To unreasonably apply federal law, it has to be Supreme Court precedent. It can't be our precedent. Well, that would be like... Under our precedent. It can't be our precedent. The clearly established federal law that we contend was not properly applied. It was contrary to its Strickland v. It's the Strickland test. If this court determines that counsel's performance was deficient, and the state court's conclusion it was not deficient was unreasonable, this court can make that decision even if there's not a U.S. Supreme Court case on exactly the same facts. This court evaluates whether or not a claim is an unreasonable application of Strickland. And with respect to the prejudice prong, this court decides whether it's an unreasonable application to say that there was no way that this defendant would have allowed mitigation evidence to be presented if he had been properly advised. I'd be happy to stand up, but I think I'm out of my 23 minutes. 23. Did you have something else? No, I'm fine. Okay. Thank you. You've reserved time for rebuttal. May it please the Court. I'm Marvin White with the Mississippi Attorney General's Office representing the respondent in this case. I think you said McCarty. I didn't know they had changed the name yet, so it's just been a recent change. We would submit that the Mississippi Supreme Court's decision and the trial court's decision on this issue of the guilty plea being free and voluntary is neither contrary to nor an unreasonable application of Strickland. And then, of course, the Mississippi Supreme Court's decision dealing with all of these issues is likewise not contrary to nor an unreasonable application. How do you see . . . I think the argument your opposing counsel is making is the critical argument in this case. At least that's my take on it, speaking only for myself. Would you address that directly and tell me and give us your best take on why it is that finding that counsel was not ineffective here, number one, and number two, that it led to his waiver of his right to go to trial being not knowing and voluntary. Tell me what's your take on that. What's your best case? Well, the best issue here, and I think, in my view, counsel opposite has conflated several issues here. And, of course, he's trying to say that he pled guilty because he wasn't fully informed of the ramifications of his pleading guilty. I think that the transcript of the guilty plea and the transcript of the post-conviction hearing that was conducted in state court refute those. And it was a credibility determination by the trial court in the post-conviction hearing there. He could have called counsel. He did not. Now, present counsel has called and are deposed, and those depositions were considered in the post-conviction before the state court and, again, by the district court in this case, the deposition of the two attorneys. And they support the conclusions reached by the Mississippi Supreme Court and the district court. What did the court actually conclude, though, that even if he had the information, that he would have still pled? Or did the court just say, oh, they did do the mitigation, and so we don't have to get to that? I think that the court found, the state court found, that there had been mitigation investigation done, and so did the district court. So if we believe that was unreasonable, would you lose or would you still win? That that investigation was unreasonable? No, if we believe that the finding that the Mississippi, that there was an investigation, if we believe that finding was an unreasonable finding, would you lose or would you still win on one of your backup arguments? Probably win because of the Landrigan argument that he said that he, you know, do not object to, don't put on a mitigation case, don't cross-examine witnesses, don't put on witnesses, said that, and was in, sitting in court when that was, you know, when all this was presented to the judge, made no objection to it whatsoever. So go back. I'm having trouble here. Go back and tell me what the state court, the relevant state court findings were on this question, whether his lawyer had been, had done enough review of the potential mitigating evidence to advise him correctly about it. Well, of what we have, I'm sorry. I had the impression that the lawyer didn't address that, but what, maybe I'm, I haven't done enough work on the record to have the impression. Well, and it's more in the deposition that it is in the record, the deposition of the two attorneys and what they had been doing, as far as mitigation investigation. But I think what's, the question has to do with what did the trial court or the other court, the Mississippi court, find regarding the investigation? Yeah. What was the finding about, did the court find, did either court find that there was an investigation? Mississippi Supreme Court found there was an investigation, so did the district court, found that the, and set it forth in the opinion. Did it, did it find that it was a reasonable investigation? I think the district court did, and I, I don't recall right now off the top of my head what the, what the conclusion of the Mississippi Supreme Court was, but I think it was also that it was a, you know, reasonable investigation. I know that the district court looked at it in both, both ways, and I think the Mississippi Supreme Court did also look at it in, in the context of, of that Landrigan and, you know, with the investigation done. It's not an in-depth. You can't, you can't tell me specifically what the Supreme Court held on that or stated on that, whether it was a reasonable investigation? Not right off the top of my head, Your Honor. I'm, I'm drawing a blank right now. But yet, you know, I mean, the Vallejo's counsel uncovered a whole lot of, of, of really good, apparently good mitigating evidence that, that was never mentioned by, by a trial counsel. Well, that's true, and of course, when you look at the, the circumstances of this case, though, there, you know, we've got to weigh that in the whole mix. And he, you know, he said that he didn't want this put on. They didn't stop at that time, stop their investigation at that point, when he said that he didn't want, they continued to do that right up until, until the, the hearing on the Senate's phase. They were, the guilty plea was entered, and then I think it was a month later that they had the Senate's phase in this case. And they continued to pursue a case in mitigation, even up to that point. And if I recall from the record, and the depositions that were taken from the trial counsel, and, you know, I, I think when you look at the facts of this case, I don't care what jury or no jury or what, if they had gone before a jury, I don't think the results would change, but there's a reasonable probability that the results would have changed. And of course, in the context of federal habeas, the . . . Well, the only indication we have that he was not fully informed is his self-serving affidavit. That was not, that was only presented much later and not at the earlier hearings. And he's, he's never testified in person or has never, you know, his, his affidavit is all we have, his self-serving affidavit. But you look at the, the plea colloquy and the evidence at the original post-conviction hearing, and, and you don't come away with a, a impression that this man didn't know what was going on. But then don't we consider the additional information that habeas counsel developed in evaluating whether he was fully informed? In a habeas situation of ineffective assistance to counsel under Harrington v. Richter, it's doubly deferential. And so I think that the findings of the Mississippi Supreme Court are, are given double deference in, in this. And I think the Mississippi Supreme Court found that this is, was a reasonable, everything was reasonable here. So you believe that the opinion says somewhere this was a reasonable investigation, that once I'm scouring this opinion, double-checking on this because the opposing counsel asked about that, you think I'm going to find that on some page in this opinion? I, I don't know if those exact words are used. But they do talk about the investigation. But if they didn't, if, if there, it doesn't say that there was a reasonable investigation, then you believe you win because of the Landrigan case, right? Yes. Okay. Of course. Do you have a response why the counsel's argument that Landrigan is inapplicable here? Do you have an argument about that? Well, I think the, the case is, of course, the Mississippi Supreme Court looked at it. There was some precedent in the Bishop case and, and the, and of course, which was later decided by this court, the Bishop versus Epps, that are cited in my brief. And of course, you know, it's, it's, as I said, the finding there is that he was sitting right there in court with, you know, when this all was said to the circuit court judge, he made no objection, didn't say, no, that's not the way I, I want this done. In fact, at one point he says, yes, I understand I'm waiving all this and waiving the appeal. And so. That, that all, as I understand the timing of all this, that first hearing, this information really wasn't developed. The one that took place, the, the circuit court judge signed the order in February of 2006. Right. It was a long time ago. And as I understand it, the evidence that we're talking about today, of all of the mitigation evidence that was available, was not before the Mississippi court was not taken into account then. No, that was, it was, well, it would not have been since it was only on the guilty plea and not the, the, of course that's, they're trying to relate back to the guilty plea. When they got to the sentence phase, post conviction, you know, this was the, the direct appeal was on the sentence, because you don't have a direct appeal from a guilty plea in Mississippi. Direct appeal of the sentence was there, and while it was pending, the, the first post conviction was filed on the guilt phase. And the court halted proceedings on the direct appeal, remanded it back for a hearing. The hearing was held. Then it was consolidated with the direct appeal on the direct appeal, that post conviction was consolidated with the direct appeal. That was all decided. He was denied relief, or affirmed on both of those counts. Then the post conviction was filed on the sentence phase. And there is where a good bit of this stuff came in about the mitigation stuff and like that. Things like that is where this investigation took place. And, and of course the guilt phase could not be raised again. Because it was already, the guilt phase issues were already decided, and under Mississippi's procedural bar rule, I think in the opinion, if I remember correctly, it does say that that, those claims dealing with that part of the, of the issue, the guilt phase, was procedurally barred because it had already been raised and decided against petitioner on direct appeal. And that the, you know, was not, those issues were not litigated then. So as I understand opposing counsel's argument, it's that there's a wealth of information about his background and his military record that should have been discovered by his lawyer, should have been investigated, was not. And if it had been, and they had talked to him about what kind of a mitigation case they could have put on, he would have elected to do it. That is what I understand, and therefore his counsel was ineffective for not having advised him before he irretrievably voted to, decided not to put on any kind of trial whatsoever, including on a sentencing phase. That should have been done, wasn't done. Well, at the sentence phase, his trial counsel got up and said, I know he's told us not to do this, and he stated, if we had a case in mitigation, this is what we would have put on. And did a brief summary, that's at 689 through 92 of the trial transcript of the sentence phase. So is your response to Judge King that the Mississippi Supreme Court determined that there was not a wealth of information, and in fact that was not presented, that in fact what was presented was significant, and that therefore there can't be a wealth of information that would have been presented that would have changed his mind? Is that what you're saying? That the court knew of all of the things about the doctors and all of that, that that was already before the court? On the post-conviction, yes, all that was before the court, before the Mississippi Supreme Court on post-conviction of the sentence phase. And of course, he was examined twice prior to the guilty plea and the sentence phase of the case, both on his own motion and extensive, and those were used in the sentence phase, or were available in the sentence phase. He allowed them to just give this brief summary of what was in mitigation and introduced the doctor's report, his own doctor's report. The doctors from the state hospital had already sent their summary report to the trial court. I don't think a lot of this mitigating evidence had much effect on the jury, like the mother comes in and talks about what a good boy he was, but here it just seems to me the type of mitigating evidence we have here is unusual. This guy was a highly decorated veteran. There's just a lot of high-quality mitigating evidence here that you don't usually find. Well, he was not a veteran. He was still enlisted. He had a good service record. He was a decorated soldier. You don't see that very often in these cases. You don't see the facts in this case, what he did to this little girl, either often in these cases. Oh, you'd be surprised. It's a pretty horrible crime. I'm going to disagree with that. All these crimes are horrible. This is a particularly egregious crime, though. Yes. I mean, he videotaped it all, too, or a great deal of it. They pointed out when they gave this summary thing to the judge that the military service, the 18 years' service in the military, so they knew about that. Yes, because there was a lot of meat you could put on those bones, as you know. That's why, I mean, particularly the medals that he won and also about his psychological problems he had had after being in the military, post-traumatic stress disorder. All of that is highly unusual mitigating evidence, in my opinion. Well, of course, we have to go back to the fact that he chose not to put this on. He did not want a case of mitigation put on. Well, isn't the argument here that if his lawyers knew this, which it's not clear they did, that if they had known it and they had understood the potential impact of it and had told him about that, that his decision would have been different? That's the argument, yes, and I don't agree with it. I mean, I don't agree that that's the case. I think they did. You know, this was just a shorthand, and of course, if we look at Mr. Loden's affidavit, of course, he has totally, you know, never heard anything. When you say they did, they did know of this information. Is that what you're saying? What is the they did in your sentence? Yes. Okay. So you disagree with the premise of the question, that if they had known they would have advised him differently, you believe they did know, correct? Yes. I mean, I think they did know this information. If you look at what they said. Mr. White, is it in their deposition that they knew about all this evidence? I mean, was that asked of the counsel? Yes, it was. I think in the deposition, it's also, as I said, this summary of the mitigating evidence in the record of the sentence phase. I'm not talking about the summary. I'm talking about the details of this mitigating evidence. If we look in the deposition of the two lawyers, we're going to find them detailing this mitigating evidence? I think that the questions were asked, what they knew, when they knew it, things like that. I'm talking about what they were asked. Did they know about this mitigating evidence, the details of it? I think they did. I think from what I recall, they did. We're going to find it in the deposition, in other words. A great deal of it, yes. The Mississippi Supreme Court found that the information which Loden asserts should have been presented is not significantly greater than that was actually before the circuit judge, despite Loden's insistence that no mitigation evidence be presented, i.e. that the judge knew of the mitigation evidence. Is that a finding that we have to defer to? I think so. Okay, thank you. And, of course, we would submit that the findings of the district court and the state court are all, I mean the district court is not clearly erroneous, and neither the state court's findings are not. Contrary to either factual findings or on the law, and that the district court was correct in finding that there was no unreasonable application and that properly denied habeas, and we would move this court to affirm the district court's finding. Thank you. I'd like to respond to a few of the points that Mr. White made and also to follow up on questions that were asked of both sides. First of all, Mr. White has a lot more habeas cases than I do, so this is understandable, but this is not a case where there was a month-long hiatus between a decision to plead guilty and the time of a sentencing hearing. Mr. White suggested that even after being told he didn't want to put mitigation evidence on, that his counsel went out and continued for another month to investigate mitigation evidence. That's not this case. The first time that anybody claims there was a discussion about whether Mr. Loden was going to plead guilty, waive jury sentencing, and not put on mitigation was on September 18, 2001. Two days later, the sentencing hearing occurred. There was no mitigation investigation conducted by counsel after September 18. This idea that notwithstanding some instruction by Mr. Loden that he didn't want mitigation investigation conducted, his counsel were out there charging forward with investigation is not this case. There was no further investigation. Do we have to defer to the Mississippi Supreme Court's determination, though, that the investigation conducted by Daniels up to that point had been significant and that the mitigation investigation conducted until they were told to stand down was a stark contrast to cases such as Wiggins and Porter, that it was significant and that the information that he says should have been presented was not any greater than what actually was presented? This is what the Mississippi Supreme Court has found. Again, Your Honor, there's deference to findings of fact, but that doesn't mean that a finding of fact is necessarily reasonable. Okay, but you agree now. I think you said earlier that there was no determination that the investigation was reasonable. The court found that the investigation was significant and that the information later presented was not significantly greater than what was already known. No, two different issues, and I stick with my original answer, which is the Mississippi Supreme Court did not say that there was a thorough investigation, which is what's required under Williams, did not say that counsel identified and found all readily available mitigating evidence, which is what's required under Strickland and Wiggins. That is not what the Mississippi Supreme Court found. Now, I have the statement. I agree with Your Honor. What it said is this case is different than Porter because, the court said, Porter, the defense counsel allegedly found nothing, and here Mr. Daniels did something. But under federal law, clearly established federal law, doing some investigation— not any significantly better or different. Again, I would say I don't think they made the finding that this satisfied a thorough investigation, finding all readily available mitigating evidence. Let me address the second point, though, Your Honor, which is you say, well, didn't the Mississippi Supreme Court say this wouldn't have made a difference? Two points. First of all, again, the prejudice prong here is if Mr. Lowden had been properly advised, we've got all this evidence, we've got the psychiatrist who's prepared to testify that your experiences give you a diagnosis of post-traumatic stress disorder. We've got all these witnesses lined up to say that you were a changed man when you came back from combat. Would you have pled differently? If the answer to that is yes, then the issue isn't that it wouldn't have made a difference. The issue is he would have— Let me ask you something right there. Now, I mean, it seems to me what you're saying is when Landon stood up and said, I don't want to introduce any mitigating evidence, he is now saying that if he'd been fully informed, he would have introduced mitigating evidence. Now, why doesn't Landon cut that argument off when he says that we've never held that that that sort of argument prevents the introduction of evidence? Well, again, what Landrigan decided did not articulate a rule of law. It articulated and said, we find here on this particular record that the Arizona State Court didn't unreasonably determine as a factual matter that Mr. Landrigan never would have allowed any mitigation evidence to be presented no matter what his counsel uncovered. And here, I don't believe the Mississippi Supreme Court made that finding, and secondly, it would be unreasonable because this is not a case where Mr. Lowden stood up, said on the record, I don't want mitigation evidence presented. Stop trying to present it. I want to be sentenced to death. Bring it on. I want to know how you get around the quote that Landrigan has said, we have never imposed an informed and knowing requirement on a defendant's decision not to introduce evidence. I get around it, Your Honor, by pointing out the cases I referenced earlier. Missouri v. Frye, Padilla, Lafler, those cases hold that that's not the question on a Sixth Amendment claim. The issue under Sixth Amendment? No, Landrigan wants a Sixth Amendment claim. This was actually decided on the prejudice prong of Strickland. But Landrigan wasn't decided on the ground that the waiver of mitigation evidence is irrelevant if it's not knowing and voluntary. If that had been the ruling in Landrigan, the court would have said, we've never imposed a knowing and intelligent waiver obligation with respect to the presentation of mitigation evidence, period, case closed. What the court did is they said, let's look, though, here. Although we've never ruled on that, as Your Honor just said it, here we find that the Arizona State Court did not unreasonably determine the facts. So it did not say that that ends the inquiry if a defendant is advised of his rights and waives them that he can't make out a Sixth Amendment claim. That's not how Landrigan was decided. And the other Supreme Court cases I've cited say the contrary, which is that knowing and voluntary waiver does not preclude or foreclose a Sixth Amendment claim. That has to do with the waiver of right to take a plea. That does not have the information about presenting evidence at trial, waiver of saying I'm not going to put on a defense. It's a completely different context. Well, first of all, I think this context in this case is an issue of would he have pled guilty and waived jury sentencing if he'd been properly advised? And so it is that case. Okay, I have a question. The Mississippi Supreme Court said that Daniel's brief summary of the mitigation evidence that would have been presented, see footnote 4, supra, that the summary report of the forensic mental evaluation of Loden by the hospital and Dr. O'Brien's report collectively addressed nearly every subject deemed pertinent by Loden. The court determined that what was there collectively addressed nearly everything deemed pertinent. Therefore, accordingly on this basis as well, Loden fails to prove that he's entitled to relief on this issue. So you need to tell me what was pertinent that wasn't collectively addressed that shows that the Mississippi Supreme Court was unreasonable. So this goes to the prejudice prong. And as I've said, first of all, it's not a question of is it reasonably probable the outcome of trial would be different. The prejudice prong in this case is is it reasonably probable he would have pled differently. So that's one thing. Further, though, what counsel said as the summary, as he stood up and said he was a good student, he was in the Marine Corps and served honorably for 18 years, and he had been abused as a child. Okay, can you answer it? I'm asking you what that you deem pertinent was not presented. One thing that was not presented, for example, is that he had been diagnosed in connection with the materials we've uncovered. He was diagnosed with suffering from post-traumatic stress disorder as a result of his combat experience and his own abuse. There was no diagnosis. Nobody was told at the trial court level during the trial by Mr. Daniels that Mr. Loden suffered from post-traumatic stress disorder. They were told he had significant impairments. So you're saying the title and the name of the impairment is what is the significant pertinent difference that makes the Mississippi Supreme Court's decision unreasonable? Well, Your Honor, I guess I would just say I think there is a big difference between a lawyer standing up and saying, my client served in the Marines for 18 years honorably, versus a lawyer standing up and saying, our psychiatrist has evaluated Mr. Loden. They've concluded, based on his combat experience, being involved in very traumatic combat experiences involving seeing people die, killing people, involved in friendly fire incidences, and all the witnesses, the recipient witnesses who testified about how it affected him, and that being presented to a jury in a contested sentencing hearing saying he suffered from post-traumatic stress disorder. And that would be different than Dr. Bryan's report or the hospital's report that said he had all kinds of cognizant dissociativeness and all of that? Yes. Okay. That's the answer. That's a fine answer. Is that the complete answer to the question? I think there's more that wasn't presented. I mean, as I said, there was no percipient witnesses' testimony about the people who were in combat with him and his military experience and said what kind of a leader he was and that he had saved people's lives. That wasn't before a sentencing hearing, a decision maker about whether he should be sentenced to death or possibly be given life without the possibility of parole. None of that was in front of this judge. And also, when this judge heard this evidence, it wasn't in the context of, Your Honor, here's this mitigation evidence. Please don't impose the death penalty. It was in the context of Mr. Loden's pleading guilty. He's waiving jury sentencing. But here's the investigation we've uncovered, and here's what it would have shown. There was no way. That wasn't any evidence, of course. As you learn in the first trial you do, statements of counsel aren't evidence. So there was no evidence in front of Judge Gardner, the trial judge, to suggest his life be spared. So the difference between what was in front of Judge Gardner and the way it was presented versus what could have been presented at a trial with all the mitigation evidence that we've uncovered, I think it's substantially different. Thank you. This case is submitted. Is he court-appointed? He doesn't say he is. No, I don't believe so. You're not. Are you court-appointed? No. You're not. Okay. Thank you. Thank you. All rise. Okay. Thank you very much. That's quite normal.